Maurice E Montgomery
89384 Hwy 140 W
Lakeview, OR 97630
(541)947-4604

Plaintiff-acting as Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Medford Division)

| | |
|---|---|
| MAURICE MONTGOMERY, an individual<br>89384 Hwy 140 W<br>Lakeview, OR 97630<br><br>Plaintiff<br><br><br>V.<br><br>California Worker's Compensation Appeals Board<br>455 Golden Gate Ave Suite 9328<br>San Francisco, CA 94102<br>         And<br>California Worker's Compensation Appeals Board<br>2115 Civic Center Drive #15<br>Redding, CA 96001<br>         And<br>State Compensation Insurance Fund<br>1275 Market Street<br>San Francisco, CA 94103<br><br><br>Defendants | CV No. 10-3076-CL<br><br><br><br>COMPLAINT: Violation of the Fourteenth Amendment of the US Constitution, Due Process<br><br>Failure to provide permanent disability benefits and medical benefits as required by law |

Plaintiff is a retired construction worker and farmer living in the County of Lake whose address is 89384 Hwy 140 W, Lakeview, OR 97630, telephone number (541)947-4604. At the time of his injury, he was a foreman and heavy equipment operator doing work on a hotel site in Hayward, CA, in June 1999.

Defendants California Worker's Compensation Appeals Board(s)are the state government agencies deciding worker's compensation benefits for injured workers in the State of California. They are located at 455 Golden Gate Ave, Suite 9328, San Francisco, CA 94102 telephone 415-703-4550 and a District Office at 2115 Civic Center Drive #15 Redding, CA 96001 telephone 530-225-2845. Defendant State Compensation Insurance Fund is a Worker's Compensation Insurance carrier in the State of California located at 1275 Market Street, San Francisco, CA 94103 telephone 530-223-7183.

**COMPLAINT**

Count 1: For Violating the Plaintiff's Due Process Rights of the Fourteenth Amendment of the US Constitution that are described in the following Counts 2 through 7.

State government must use fair procedures when doing their jobs, making decisions and enforcing the laws. Citizens have the right to due process by being treated fairly by all agencies of state government. It must also be fair when you are applying for state government benefits, such as worker's compensation. Due process also gives you the right to recover compensation for wrongful deprivation., such as benefits listed above. For the pain, suffering, financial losses incurred, plaintiff requests the award of $250,000.

Count 2: Violation of Due Process 14th Amendment.

On March 7, 2010 I wrote a letter to the Office of the Commissioners, San Francisco, with a Petition for Disqualification of Judge. The main basis for disqualification was the judge is not an honest person. He, in writing, stated that I dismissed my attorney, Rodney Benson, when in fact he dismissed Rodney Benson, my attorney. How then could I continue having confidence in a man's judgment who does not tell the truth? This information and other information is contained in the above-referenced letter, and also in a follow-up letter dated March 28, 2010. Also on April 28, 2010, I submitted a Notice of Readiness To Proceed. Also on May 21, 2010, I submitted a letter requesting to be scheduled for trial. I have had no response. The CA WCAB Information and Assistance Officers gave me the telephone number of the "Recon Unit" for CA Worker's Compensation Appeals Board, who apparently is the decision-maker in the issue of the disqualification of the judge. However, under the law, CA Code of Regs 10452 and Labor Code 5911, this petition is to be handled in the same manner as a request for reconsideration and the decision-maker is to be a panel of three Commissioners at the Worker's Compensation Appeals

Board in San Francisco. According to CA Labor Code 5900, the petition is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date of filing. It is now 4 months and 7 days from the date of filing - well beyond the 60 days - and a phone call to the "Recon Unit" gave me the answer that "it is being circulated and will be given to the Commissioners and a decision will be made - eventually." However, there is no time limit indicated on when they have to decide on this issue. Therefore, it could go on forever, which it apparently is doing. Under Labor Code 133, the board has the power to do all things necessary or "convenient" in the exercise of any power or jurisdiction conferred upon it under this code. Apparently it is not, and has not been, "convenient" for them to follow their own regulations.

On or about February 3, 2010, plaintiff received the Opinion and Decision After Reconsideration from the San Francisco Appeals Board, in which the plaintiff was advised on the proceedings to disqualify a Worker's Comp judge. It further states "A petition for disqualification shall be referred to and determined by a panel of three Commissioners of the Appeals Board in the same manner as a petition for reconsideration." (CA Code of Regulations 10452) It further states on page six that this matter will be returned to trial level for further proceedings and instructs the defendant to provide any appropriate benefit to the plaintiff including medical treatment. The San Francisco Appeals Board has failed to enforce these requirements. As the California State Compensation Insurance Fund has refused medical treatment and also terminated, in April 2009, permanent disability benefits which they are required by Labor Code 4650 to pay until the entire proceedings are determined by either the Worker's Comp judge or the Appeals Board in San Francisco. For this disregard of state government-provided benefits, plaintiff requests damages in the amount of $100,000.

Count 3:  Failure to provide medical benefits as required by law - Non-emergency medical transportation.

Non-emergency medical transportation: On March 8, 2004, I received from Dr. Karl Wenner a prescription for an all-terrain vehicle that would provide non-emergency medical transportation. In July of 2004, I submitted a copy of the invoice and request for payment for $7103 for purchase of an all-terrain vehicle. On July 19, 2004, I received a denial written by Dr. Eichner to Dr. Karl Wenner stating there is no evidence from scientific studies of the efficacy of such vehicles for treatment of back injuries. On February 3, 2006 Dr. Karl Wenner wrote to SCIF supporting the need for the all-terrain vehicle. On March 18, 2009, Dr. Benjamin Balme wrote a letter to SCIF supporting the need for same. On April 3, 2009, Dr. Wenner wrote a letter to SCIF supporting the need for same. Labor Code 4600 contains the following language: "Medical, surgical, chiropractic, acupuncture and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches and apparatus, including orthotic and prosthetic devices that is reasonably required to cure or RELIEVE the injured worker from the effects of his or her injury shall be provided by the employer." Dr. Eichner did not address the word RELIEVE in his denial of this apparatus. I live on a small farm and do not have access to concrete and asphalt, cannot walk over rough ground and barely on asphalt and concrete, with only short distances. This vehicle relieves and helps me to live a reasonably useful life. It enables me to get to my mailbox and see to my animals, take care of my trash, see to my utilities and other things that a city person might use a wheelchair or scooter for. Labor Code also provides for the rental or purchase of

durable medical equipment or devices. Labor Code 4610 states an appeal of a denial may be filed. On July 28, 2004 I filed an appeal, per the claims adjuster's instructions, to this denial and on April 2, 2006 I sent a letter to SCIF again requesting my appeal to be heard. I had no response to either of these letters of appeal. I have advised the WCAB in San Francisco of this issue by letter. Again, I have had no response. For this denial of due process, I request the amount of $25,000.

Count 4: Failure to provide medical benefits as required by law - Nursing.

Nursing: On March 13, 2006 plaintiff received a prescription from Dr. Karl Wenner for home health aide care. In approximately March 2009 plaintiff requested nursing reimbursement from 2006 to 2009 in the amount of $7296.40. This would be at $37.50/week to help plaintiff bathe and take care of personal hygiene. When this was requested at a hearing before WCAB Judge Jones at Redding, CA, his comment was "We don't do nursing." Nursing is required by Labor Code 4600 which states "Medical care includes nursing." Therefore the amount of nursing care would be the amount shown above plus cumulative to whenever judgment might be rendered at $37.50/week, plus damages for denial of due process in the amount of $25,000.

Count 5: Failure to provide assistance in finding treatment as requested by plaintiff - Arachnoiditis.

On March 14, 2006, Judge Jones mentions that arachnoiditis appears not to have been considered. The plaintiff developed arachnoiditis apparently during surgery related to his worker's comp injury. It is first mentioned in the analysis of his MRI after the second surgery. On August 16, 2006 plaintiff forwarded to State Compensation Insurance Fund a letter from Center For Restorative Spine Surgery in St. Paul, Minnesota detailing the requirements necessary to start treatment for this painful, debilitating condition, the first being a $500 deposit before the first examination. No response was ever received. Plaintiff has subsequently asked SCIF more than once for help in finding treatment for this condition and to be reasonably assured that SCIF would pay for the treatment before he commences, and has received no response. A letter was sent Certified Mail to the Commissioners in San Francisco on May 21, 2010 that referred to Labor Code 4067 and Section 5803, requesting a formal medical evaluation concerning this condition. No response was received.

Labor Code 4751 states "If an employee who is permanently partially disabled receives a subsequent compensable injury resulting in additional permanent partial disability, so that the degree of disability caused by the combination of both disabilities is greater than that which would have resulted from the subsequent injury alone, and the combined effect of the last injury and the previous injury or impairment is a permanent disability equal to 70% or more of total, he shall be paid in addition to the compensation due under this code for the permanent partial disability caused by the last injury compensation for the remainder of the combined permanent disability existing after the last injury as provided in this article; provided that …the permanent disability resulting from the subsequent injury, when considered alone and without regard to or adjustment for the occupation or the age of the employee, is equal to 35 percent or more of total."

The law further provides that "Disability caused by treatment for an industrial treatment is compensable. An employer is liable for all legitimate consequences following an industrial accident, including the negligence of a physician provided by the employer; and the employee is entitled to a permanent disability rating covering all disability stemming from the accident."

The law further provides that "The employer's refusal to provide medical treatment need not be express or complete. Rather, the refusal or neglect may be established under a variety of circumstances. For example, an actual refusal to furnish treatment occurs when the employer denies liability and clearly indicates that he or she will not provide treatment, or when the attending physician terminates treatment without making future appointments. It is also tantamount to a refusal when the employer refers an employee for further treatment to a physician who indicates that no further treatment is necessary."

The law further provides that "When an employer neglects or refuses to provide medical treatment, the Worker's Compensation Law gives the employee the right to self-procured treatment at the employer's expense, but does not impose a duty on the employee to secure such treatment."

Plaintiff sent a letter to SCIF and Office of the Commissioners in San Francisco on June 4, 2010, requesting whether or not SCIF would pay for treatment of arachnoiditis. Again, no response was received.

The law further provides that a permanent disability rating may be based on subjective symptoms. Pain is considered a subjective disability, but can be rated when it causes disability. Pain is properly described when it precludes the activity that causes it. Pain can be the sole basis of a permanent disability rating but more typically it is a factor added to another finding of disability, such as arachnoiditis.

It states above that the employer is liable for the doctor's malpractice, as well as the treatment for this condition, which has been completely ignored by all concerned. Damages for physician's malpractice and surgery after discovering arachnoiditis without advising the plaintiff of evidence of this condition requested in the amount $100,000. Damages for the denial of due process are requested in the amount of $100,000.

Count 6:  Permanent Disability Benefits and Life Pension

Labor Code 4650 (b) states that the employer shall commence timely payments and continue until a reasonable amount of permanent indemnity due has been determined. If not paid timely, it will be increased 10%. The employer stopped paying the permanent disability benefit in April 2009, stating that my previous injury ten years prior overlapped my current injury and for this reason they stopped payment. Their reason for stopping was never determined as being factual by the Appeals Board. As a matter of fact, SCIF stipulated to my rating of 73% in the Findings & Award issued by Judge Jones.

Employees who suffer permanent total disability are entitled to be paid the temporary disability

rate applicable on the date of injury. When successive injuries that become permanent and stationary at the same time cause total disability, the rate in effect at the time of the last injury is used to compute the appropriate rate. My permanent disability rating may be 100% total if I am granted the medical evaluation I have been requesting to consider my arachnoiditis.
On December 8, 2006 SCIF sent a letter for permanent disability benefits with a rate of $230/week, to pay a total of $118,795. In April 2, 2009 plaintiff received a letter from SCIF terminating payment saying an injury 10 years prior prevented me from doing the ability to carry and lift. The law clearly states that the previous injury must have been labor-disabling at the time of the subsequent injury, which it was not. I was doing heavy construction work, running equipment, surveying and carrying heavy objects and doing heavy work at the time of my subsequent injury. The total due of $118,795 less amount paid to April 2009 of $52,878.54 leaves a balance due of $65,916.46 plus 10% penalty for non-timely payment. The total amount now due is $72,508.11. Plaintiff requests judgment on this count of $72,508.11 against State Compensation Insurance Fund and damages from Worker's Compensation Appeals Board for failure to provide due process in the amount of $100,000.

Life Pension - The defendant SCIF should be ordered to pay the plaintiff Life Pension as required by Labor Code 4659.

<u>Count 7:</u>

All the defendants named have failed to advise the plaintiff of Labor Code 62.5. In a telephone conversation with the Sacramento office of the Department of Industrial Relations that handles the Subsequent Injuries Benefit Trust Fund (SIBTF), they advised me that as my permanent and stationery status was in 2004, that the statute of limitations had run out for applying for this benefit. When State Compensation Insurance Fund made me the offer of 69.5% disability rating, so they could avoid paying me permanent disability benefits and life pension, which my attorney thought was a good deal, I did not accept this offer. However, if I had know about this Labor Code, which might have addressed my arachnoiditis condition, there might have been a different decision made at that time. Labor Code 62.5 contains the following information: The SIBTF is a source of additional compensation to injured workers who already had a disability or impairment at the time of injury. For benefits to be paid from the SIBTF, the combined effect of the injury and the previous disability or impairment must result in a permanent disability of at least 70 percent. The fund enables employers to hire disabled workers without fear of being held liable for the effects of previous disabilities or impairments. SIBTF benefit checks are issued to injured workers by the SIBTF Claims Unit after benefits are awarded by the Workers' Compensation Appeals Board. For failure to provide equal protection under the law, Fourteenth Amendment of the Constitution of the United States, plaintiff requests damages in the amount of $100,000.

Respectfully submitted,

_____          _8-9-10_____
Maurice Montgomery Plaintiff                                    Date